# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

RASHFORD E. GALLOWAY,

    Plaintiff,

      v.

UNITED STATES OF AMERICA,

    Defendant.

1:14-cv-06372-NLH-AMD

**OPINION**

---

**APPEARANCES**:

RASHFORD E. GALLOWAY
P.O. BOX 12
OVER RIVER ORANGE
SIGN POST OFFICE
ST. JAMES, JA WEST INDIES[1]
    Appearing *pro se*

KRISTIN LYNN VASSALLO
OFFICE OF THE U.S. ATTORNEY
DISTRICT OF NEW JERSEY
970 BROAD STREET
NEWARK, NJ 07102
    On behalf of Defendant

---

[1] On October 5, 2017, the Court issued an Order to Show Cause to Plaintiff regarding his duty to provide the Court with his updated address because a recent notice from the Clerk's office had been returned as undeliverable. (Docket No. 42.) Plaintiff timely complied with the Court's Order, and noted that issues with mail delivery in Jamaica were the cause of the returned mail. Plaintiff also supplied a different address that Plaintiff relates may result in more reliable mail delivery. (Docket No. 43.)

**HILLMAN**, District Judge

This matter concerns claims by Plaintiff against the Federal Bureau of Prisons that his assignment to a third-floor cell while he was incarcerated at FCI Fort Dix aggravated his back injury, causing him further injury.[2]  For the reasons expressed below, Defendant's motion will be granted.[3]

## BACKGROUND

Plaintiff, Rashford Galloway, arrived at FCI Fort Dix in

---

[2] Also pending is Defendant's motion to seal Plaintiff's medical records submitted in relation to Defendant's motion.  The purpose of sealing Plaintiff's medical records is to protect his privacy.  See Local Civil Rule 5.2 ("[C]aution must be exercised when filing documents that contain . . . Medical records, treatment, and diagnoses . . . .").  Plaintiff, however, has opposed Defendant's motion, and it is unclear to the Court whether Plaintiff truly wishes his medical records to be accessible to the public, or is simply operating under a misunderstanding that the Plaintiff's medical records will be considered by the Court in resolving the summary judgment motion only if they are unsealed.  To the contrary, sealing protects Plaintiff's medical records from public access not from the Court and they have been considered in resolving these motions.  Consequently, the Court will grant Defendant's motion to seal in a separate order, but the Court will provide Plaintiff with 60 days to inform the Court as to whether he wishes his medical records unsealed and therefore publically available.

[3] As discussed below, Plaintiff's complaint can be fairly construed to assert an Eighth Amendment claim for cruel and unusual punishment.  Defendant viewed Plaintiff's complaint to only assert a claim for negligence, but recognizing that Plaintiff's opposition brief repeatedly claims that Defendant's actions also constituted cruel and unusual punishment, Defendant's reply addresses why such a claim fails as a matter of law.  The Court considers this issue fully briefed, and, in addition to Plaintiff's negligence claim, will also assess the viability of Plaintiff's Eighth Amendment claim.

February 2007.  In November 2012, Plaintiff was assigned to a
two-person cell on the third floor of Building 5752 in the east
compound of Fort Dix, and in order to travel between floors,
inmates used one of two staircases.  On November 29, 2012,
Plaintiff was walking up one of the stairwells in Building 5752
carrying a bag from the commissary.  As he climbed from the
second to the third floor, Plaintiff's knee "gave out" due to
shooting pain, which caused him to fall backwards and hit his
back and hip on the stairs.

Plaintiff does not allege that Defendant is liable for his
fall.[4]  Rather, he contends that Defendant's failure to relocate
him to a first-floor cell after his fall exacerbated his back
injury.  Plaintiff remained in his third-floor cell from the
date of his fall until his transfer on October 29, 2013 to
another institution.  During most of that time, Plaintiff used a
wheelchair and cane to get around the prison.  Plaintiff claims
that having to go up and down three flights of stairs multiple
times a day, often on his hands and knees, made his back injury
worse, and constituted cruel and unusual punishment.

Defendant has moved for summary judgment, arguing that

---

[4] Some portions of Plaintiff's complaint could be read to assert
a claim that Defendant was negligent in not anticipating that a
fall would occur as a result of a known problem with Plaintiff's
knee.  Subsequent submissions from the Plaintiff make clear that
he disavows any claim that Defendant was responsible for his
initial fall.

Plaintiff has not provided any evidence to support his
contention that the location of his cell on the third floor
aggravated his back injury.  Defendant further argues that
Plaintiff has not provided any evidence to refute Defendant's
expert, who reviewed Plaintiff's medical records and determined
that the medical records establish that Plaintiff's condition
actually improved during his course of treatment for the
injuries he sustained in the fall.  Thus, Defendant argues that
it is entitled to judgment in its favor on Plaintiff's
negligence claim.

     Plaintiff has opposed Defendant's motion,[5] and argues that
Defendant was negligent in Plaintiff being forced to remain in a

---

[5] Pursuant to Local Civil Rule 56.1, Defendant submitted a
statement of material facts in support of its motion for summary
judgment.  Since Defendant is moving for summary judgment, all
of Plaintiffs' evidence "is to be believed and all justifiable
inferences are to be drawn in [his] favor."  Marino v. Indus.
Crating Co., 358 F.3d 241, 247 (3d Cir. 2004).  Plaintiff,
however, has failed to submit a "responsive statement of
material facts, addressing each paragraph of movant's statement,
indicating agreement or disagreement, if not agreed, stating
each material fact in dispute and citing to the affidavits and
other documents submitted in connection with the motion[ ]" as
required by Local Civil Rule 56.1.  Ordinarily, as a result of a
failure to abide by Local Civil Rule 56.1, "any material fact
not disputed shall be deemed undisputed for purposes of the
summary judgment motion."  Id.  Even though Plaintiff is
appearing pro se, pro se litigants are "not excused from
conforming to the standard rules of civil procedure."  McNeil v.
United States, 508 U.S. 106, 113 (1993).  That having been said,
in light of Plaintiff's pro se status, the Court will consider
all of his arguments and proffered evidence in the light most
favorable to him despite his non-compliance with our local
rules.

third-floor cell, where at times he had to crawl on his hands
and knees to get to and from his cell, and that such
circumstances also constituted cruel and unusual punishment.
Defendant has construed Plaintiff's complaint to only assert a
claim of negligence, but argues that even if Plaintiff's
complaint could be read to assert a claim for an Eighth
Amendment violation, it would fail because the United States has
not waived its sovereign immunity for this constitutional tort
claim, and because Plaintiff has failed to exhaust his
administrative remedies, which is a jurisdictional prerequisite
for prisoners before filing suit for constitutional claims.

## DISCUSSION

### A.   Subject matter jurisdiction

Because Plaintiff has lodged his negligence claim against
the United States, the Court has subject matter jurisdiction
over Plaintiff's complaint under 28 U.S.C. § 1346(b)(1) ("[T]he
district courts . . . shall have exclusive jurisdiction of civil
actions on claims against the United States, for money damages,
accruing on and after January 1, 1945, for injury or loss of
property, or personal injury or death caused by the negligent or
wrongful act or omission of any employee of the Government while
acting within the scope of his office or employment, under
circumstances where the United States, if a private person,
would be liable to the claimant in accordance with the law of

the place where the act or omission occurred.").

**B.    Standard for Summary Judgment**

Summary judgment is appropriate where the Court is
satisfied that the materials in the record, including
depositions, documents, electronically stored information,
affidavits or declarations, stipulations, admissions, or
interrogatory answers, demonstrate that there is no genuine
issue as to any material fact and that the moving party is
entitled to a judgment as a matter of law.  Celotex Corp. v.
Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such
that a reasonable jury could return a verdict in the nonmoving
party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986).  A fact is "material" if, under the governing
substantive law, a dispute about the fact might affect the
outcome of the suit.  Id.  In considering a motion for summary
judgment, a district court may not make credibility
determinations or engage in any weighing of the evidence;
instead, the non-moving party's evidence "is to be believed and
all justifiable inferences are to be drawn in his favor."
Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir.
2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating
the absence of a genuine issue of material fact.  Celotex Corp.

v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has

met this burden, the nonmoving party must identify, by

affidavits or otherwise, specific facts showing that there is a

genuine issue for trial.  Id.  Thus, to withstand a properly

supported motion for summary judgment, the nonmoving party must

identify specific facts and affirmative evidence that contradict

those offered by the moving party.  Anderson, 477 U.S. at 256-

57.  A party opposing summary judgment must do more than just

rest upon mere allegations, general denials, or vague

statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir.

2001).

    **C.  Analysis**

        **1.  Plaintiff's negligence claim**

Plaintiff claims that Defendant was negligent when it

failed to provide Plaintiff with a first-floor cell after he

suffered from his back injury.  Plaintiff contends that during

the time he required a wheelchair to get around the prison due

to the injuries he sustained in his fall, he still was required

to walk up and down three flights of stairs three times a day.

Plaintiff claims that this aggravated his injuries and caused

him additional pain and suffering.

The United States has sovereign immunity except where it

consents to be sued.  United States v. Bormes, 133 S. Ct. 12, 16

(2012); United States v. Mitchell, 463 U.S. 206, 212 (1983).  In

7

the absence of such a waiver of immunity, Plaintiff cannot proceed in an action for damages against the United States. See FDIC v. Meyer, 510 U.S. 471, 484–87 (1994).

The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401, 2671, et seq., constitutes a limited waiver of the sovereign immunity of the United States. 28 U.S.C. § 2679(b)(1); White-Squire v. United States Postal Service, 592 F.3d 453, 456 (3d Cir. 2010). The Federal Tort Claims Act ("FTCA") gives a district court exclusive jurisdiction over civil actions: "[1] against the United States, [2] for money damages, ... [3] for injury or loss of property, ... [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995) (quoting 28 U.S.C. § 1346(b)); see also CNA v. United States, 535 F.3d 132, 141 (3d Cir. 2008) (quoting FDIC v. Meyer, 510 U.S. at 477); United States v. Muniz, 374 U.S. 150 (1963).

The FTCA "does not itself create a substantive cause of action against the United States; rather, it provides a mechanism for bringing a state law tort action against the federal government in federal court." In re Orthopedic Bone

8

<u>Screw Prod. Liab. Litig.</u>, 264 F.3d 344, 362 (3d Cir. 2001).[6]
FTCA claims are governed by the substantive tort law of the
state where the acts or omissions occurred.  <u>See</u> <u>FDIC</u>, 510 U.S.
at 477-78.  The Court therefore applies New Jersey substantive
law to assess Plaintiff's claims.

To prevail on a claim of negligence, a plaintiff must
establish four elements: (1) that the defendant owed a duty of
care; (2) that the defendant breached that duty; (3) actual and
proximate causation; and (4) damages.  <u>Fernandes v. DAR</u>
<u>Development Corp.</u>, 119 A.3d 878, 885-86 (N.J. 2015)(citations
omitted).  Ordinarily, the plaintiff bears the burden of proving
the defendant's negligence and that such negligence was the
proximate cause of the plaintiff's injury.  <u>Id.</u> (citations
omitted).

For a plaintiff to show proximate cause, a defendant's
conduct must be a cause-in-fact of the plaintiff's injury, and
the plaintiff must prove this fact by a preponderance of the
evidence.  <u>Webb v. United States</u>, 2016 WL 3647988, at *2 (D.N.J.
2016) (citing <u>Kulas v. Public Serv. Elec. & Gas Co.</u>, 41 N.J.

---

[6] Defendant does not argue that Plaintiff failed to comply with
the tort claim notice requirement of the FTCA.  <u>See</u> <u>Martin v.</u>
<u>Unknown U.S. Marshals</u>, 965 F. Supp. 2d 502, 538 (D.N.J. 2013)
(citing 28 U.S.C. § 1346(b); 28 U.S.C. § 2675(a)) (explaining
that a jurisdictional prerequisite to filing certain types of
civil suits against federal agents under the FTCA requires a
claimant to place the government on notice, within ninety days
of the accrual of such claim).

311, 317 (1964)).  "It is axiomatic that 'the mere showing of an accident causing injuries is not sufficient from which to infer negligence.  Negligence is a fact which must be proved; it will not be presumed.'" <u>Fedorczyk v. Caribbean Cruise Lines, Ltd.</u>, 82 F.3d 69, 74 (3d Cir. 1996) (quoting <u>Hansen v. Eagle-Picher Lead Co.</u>, 84 A.2d 281, 284 (N.J. 1951)).  "The plaintiff must introduce evidence which provides a reasonable basis for the conclusion that it was more likely than not that the negligent conduct of the defendant was a cause in fact of the injury." <u>Id.</u> (citation omitted).

Here, Plaintiff claims that during the months he used a wheelchair to get around Fort Dix, he remained assigned to a third-floor cell, which, unless someone helped him, required him to crawl up and down the stairs on his hands and knees several times a day.  Plaintiff also claims that having to ascend and descend the stairs during those months aggravated and exacerbated his back injuries.

Defendant argues that Plaintiff has provided no proof to support his claim that going up and down the stairs during that time period made his back injury worse.  Even assuming that Defendant had a duty to provide Plaintiff with a cell on the first floor and it breached that duty,[7] Defendant argues that

---

[7] Plaintiff claims that he asked his building counselor and the medical department many times to be assigned a first-floor cell,

Plaintiff cannot show how that breach of duty caused Plaintiff any injuries. Indeed, Defendant argues that Plaintiff's condition improved during the time Plaintiff was assigned a wheelchair, to the point he requested to return the wheelchair and use a cane instead, and then ultimately walked without any assistive device.

The Court agrees with Defendant that there exists no material dispute as to causation. On February 11, 2013, the health services department at Fort Dix issued Plaintiff the use of a wheelchair and crutches, in addition to continuing him on several medications. By March 22, 2013, Plaintiff was seen at health services for a medication renewal/review, and Plaintiff reported that his back pain was well-controlled with the medications he was taking and denied any side-effects. On April 10, 2013, at another health services check-up, the doctor found that the X-rays taken at the direction of an orthopedist Plaintiff saw in February 2013 were unremarkable, Plaintiff's medications were helpful, and Plaintiff reported that he had been getting around with a wheelchair, but now wanted to use a cane instead. Two weeks later in April 2013, Plaintiff stopped

---

but there is no evidence in the record to support that contention. Even accepting that Plaintiff repeatedly made those requests, Plaintiff admits that he did not file a grievance or submit a "cop-out" about his assignment to a third-floor room.

using the wheelchair altogether, and Plaintiff was observed
walking on the track at 7:15 a.m., ambulating without difficulty
while using the cane.  Plaintiff subsequently requested reduced
medications, and on October 22, 2013, just prior to transfer out
of Fort Dix, Plaintiff requested a knee and back brace to
replace the ones that had gone missing, and a lower bunk pass.
The report notes that Plaintiff had no other complaints.

Plaintiff's account is in line with his medical records.
Plaintiff testified at his deposition that he used the
wheelchair for several months, and his back pain gradually
decreased over the course of these months, to the point that he
asked to exchange the wheelchair for a cane at his April 10,
2013 appointment.[8]  By the time Plaintiff transferred out of Fort
Dix in October 2013, Galloway was able to walk around the track
20-40 laps three to four times a week, and he was only
occasionally using a cane.

---

[8] Plaintiff relates that he used a wheelchair from December 6,
2012, but the medical records show that he was issued a "medical
duty status" form, which allowed Plaintiff to have a pair of
crutches, a wheelchair, and carry a cane, on February 11, 2013.
The date Plaintiff began to use a wheelchair does not ultimately
affect the Court's analysis of Plaintiff's claim, but the Court
will accept as true that Plaintiff used a wheelchair beginning
in December 6, 2012.  Plaintiff also states that he used the
wheelchair until May 3, 2013, but the medical records show that
he asked to return the wheelchair on April 10, 2013.  Again,
these dates do not affect the outcome of Plaintiff's case, but
the Court will accept as true Plaintiff's representation as to
the duration of time he used a wheelchair.

Defendant's expert, Dr. Wendell Scott, who is a board-certified orthopedic surgeon with more than thirty years of experience in the field of orthopedics, provides further support that Plaintiff has not established that his third-floor cell aggravated his back injury.  Dr. Scott opined that, within a reasonable degree of medical probability, the Plaintiff sustained a back injury on November 29, 2012, which either caused the L4/5 disc herniation noted in his June 2013 MRI, or exacerbated a prior L4/5 disc herniation.  Dr. Scott further opined that treatment at Fort Dix from December 2012 through April 2013 improved Plaintiff's pain and permitted an increase in his functional capability, a conclusion supported by Plaintiff's request on April 10, 2013, to stop use of the wheelchair and to walk with a cane.  Based on these records, Dr. Scott concluded that the treatment at Fort Dix did not exacerbate Plaintiff's back condition.

Dr. Scott further concluded that although Plaintiff claims to have experienced increased back pain when climbing stairs between December 2012 and April 2013, there is no objective medical evidence that the low back diagnosis, an L4/5 disc herniation, was worsened by stair climbing.  Dr. Scott points out that Plaintiff's lumbar spine MRI scan in June 2013 did not identify compression or direct pressure upon the left L4 and left L5 spinal nerve roots, which one would expect to see if

Plaintiff's condition had worsened.  Furthermore, at no time between December 2012 and April 2013 did health care professionals at Fort Dix document worsening lower extremity neurologic function based on increasing loss of motor strength, greater compromise in sensation, or greater compromise in deep tendon reflexes.

Dr. Scott noted that a worsening of the L4/5 disc herniation would have caused greater pressure on the spinal nerve roots at L4/5 and thus greater neurologic function compromise of the lower extremities (such as loss of motor strength, sensation, or deep tendon reflexes) that would have been easily diagnosed on physical examination.  In Dr. Scott's view, the absence of any such findings for Plaintiff provides further evidence that he did not experience aggravation of the L4/5 disc herniation.  Likewise, the improvement in Plaintiff's condition and his request to use a cane in place of wheelchair support the conclusion that there was no worsening of the herniation or any loss of neurological function in the lower extremity.

Dr. Scott also notes that, between December 2012 and April 2013, Plaintiff improved without invasive spine treatments. Invasive spine intervention for a worsening disc herniation would include invasive pain management treatments with injections into the spinal column, medial bundle branch blocks,

14

and radiofrequency ablation of medial bundle branch nerves, with the most invasive treatment being surgical excision of the herniated disc material to relieve spinal nerve root and spinal cord pressure. Dr. Scott concludes that Plaintiff's improvement without invasive spine treatment is further objective evidence of no worsening of the L4/5 disc herniation between December 2012 and April 2013.

In conclusion, Dr. Scott found that, within a reasonable degree of medical probability, Plaintiff's climbing of stairs between December 2012 and April 2013 did not exacerbate the L4/5 disc herniation despite his reporting of a subjective increase in pain.

Based on the foregoing, the Court finds that even if Defendant breached its duty to provide Plaintiff with a first-floor cell, Plaintiff has failed to offer sufficient evidence from which a reasonable jury could conclude his continued housing on the third floor caused him the damages he claims.[9] Plaintiff's burden to establish proximate cause must be supported by a preponderance of the evidence, but aside from his claims of subjective pain, all the evidence in this case refutes

---

[9] Even if we construe Plaintiff's claim to be that the lack of a first floor cell negligently delayed Plaintiff's improved condition the Court would still grant summary judgment. There is no record evidence to support a claim that recovery was delayed. Therefore any jury finding in that regard would rest solely on speculation.

Plaintiff's claims that his third-floor cell aggravated his back injury.  To the contrary, the record evidence establishes that Plaintiff's back condition significantly improved rather than deteriorated during that time.

We note that the Court is perplexed by the seeming incongruity of prison officials issuing an inmate a wheelchair to move around on the first floor and at the same time forcing him to climb two sets of stairs with a recognized back injury to his cell and bunk several times a day.[10]  However, to the extent Plaintiff asserts a negligence claim such a claim hinges on proving injury and causation as much as proving a breach of a duty.  "[T]he issue of a defendant's liability cannot be presented to the jury simply because there is some evidence of negligence" – "[t]here must be evidence or reasonable inferences therefrom showing a proximate causal relation between defendant's negligence, if found by the jury, and the resulting injury."  <u>Davidson v. Slater</u>, 914 A.2d 282, 293 (N.J. 2007) (internal quotations and citations omitted).

Plaintiff has failed to provide disputed issues of material fact to support his contention that Defendants' failure to

---

[10] Moreover, the allegation, not rebutted, that for at least some of that time Plaintiff had to navigate stairs on his hands and knees, paints a disturbing picture of demeaning and, if a first floor cell had been available, unnecessary mistreatment.  We address any asserted constitutional claim below.

provide him with a cell on the third floor following his back injury caused him any additional injury. Plaintiff's unsupported, conclusory statements to the contrary cannot save his claim. Defendant is therefore entitled to summary judgment on Plaintiff's negligence claim.

## 2. Plaintiff's Eight Amendment Claim

Plaintiff's opposition to Defendant's motion states that he suffered from cruel and unusual punishment by remaining assigned to a third-floor cell, but Plaintiff's complaint does not explicitly contain an Eighth Amendment claim. Accordingly, we do not fault Defendant for narrowly construing Plaintiff's complaint as only asserting a claim for negligence under the FTCA.

The Court, however, must construe Plaintiff's complaint liberally when considering claims drafted by a pro se plaintiff. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). Plaintiff's complaint avers several times that Defendant's actions constituted cruel and unusual punishment, and Plaintiff's opposition brief repeatedly reasserts that contention. Thus, the Court will construe Plaintiff's complaint to contain an inartful claim against Defendant for a violation of the Eighth Amendment even if that Amendment or the Constitution are not expressly invoked. Nonetheless, such a claim, like the negligence claim, must fail.

Constitutional torts alleged by federal prison inmates may be advanced under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971). In Bivens, the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages. The Supreme Court has also implied damages remedies directly under the Eighth Amendment. See Carlson v. Green, 446 U.S. 14 (1980); see also Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004), cert. denied, 543 U.S. 1049 (2005) (explaining that Bivens actions are simply the federal counterpart to § 1983 actions brought against state officials who violate federal constitutional or statutory rights).

In order to state a claim under Bivens, a claimant must show: (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law. See Couden v. Duffy, 446 F.3d 483, 491 (3d Cir. 2006).

Prison conditions can run afoul of the Eighth Amendment's proscription on cruel and unusual punishment by either ignoring "evolving standards of decency" or involving "unnecessary and wanton infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (citations omitted). To assert an Eighth Amendment

claim resulting from an inmate's conditions of confinement, a prisoner must first show that the alleged deprivation is "sufficiently serious" and that the prisoner has been deprived of the "minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994). A prisoner must then show that prison officials recognized the deprivation and demonstrated "deliberate indifference" to the prisoner's health or safety. Id. Only "'extreme deprivations'" are sufficient to present a claim for unconstitutional conditions of confinement. See Fantone v. Herbik, 528 F. App'x 123, 127 (3d Cir. 2013) (quoting Hudson v. McMillian, 503 U.S. 1, 8–9 (1992)).

Even if we accept that Plaintiff's allegations concerning the difficulties he faced in reaching the third floor meet the high evidentiary burden of an Eighth Amendment claim, his claim still fails for three jurisdictional reasons. First, the United States is not liable under the FTCA and § 1346(b), the statutes Plaintiff invokes, for constitutional tort claims. FDIC v. Meyer, 510 U.S. 471, 478 (1994) (explaining that absent a waiver, sovereign immunity shields the federal government and its agencies from suit, and the FTCA's waiver of sovereign immunity does not encompass federal constitutional tort claims against the United States or its agencies).

Second, even if we construe Plaintiff's complaint to assert a stand-alone Bivens claim, such an action is not available

against the United States or one of its agencies.  See Corr.
Servs. Corp. v. Malesko, 534 U.S. 61, 72 (2001); Jaffee v.
United States, 592 F.2d 712, 717 (3d Cir. 1979).  Instead, a
Bivens actions must be lodged against an individual federal
actor.  See Corr. Servs. Corp., 534 U.S. at 71 (explaining that
Bivens claims may be brought only against individual federal
officers, not the United States or the BOP).  Plaintiff has only
asserted his claims against the BOP.

Third, in order to bring an Eighth Amendment violation
claim in the first instance, Plaintiff is required to show that
he exhausted his administrative remedies.  The Prison Litigation
Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e(a), mandates that
an inmate exhaust "such administrative remedies as are
available" before bringing suit to challenge prison conditions.
Section 1997e(a) provides: "No action shall be brought with
respect to prison conditions under section 1983 of this title,
or any other Federal law, by a prisoner confined in any jail,
prison, or other correctional facility until such administrative
remedies as are available are exhausted."  This language is
mandatory.  Ross v. Blake, 136 S. Ct. 1850, 1856 (2016); Nyhuis
v. Reno, 204 F.3d 65, 68 (3d Cir. 2000) ("[Section] 1997e(a)
applies equally to § 1983 actions and to Bivens actions.").

Plaintiff claims in his complaint that he pleaded with the
building counselor more than 20 times to secure a cell on the

first floor, and he pleaded with medical staff for a first-floor cell, but Plaintiff has not provided any indication that he pursued any administrative remedies.  Thus, Plaintiff would not be able to bring any Eighth Amendment violation claim unless he exhausted his administrative remedies at FCI Fort Dix.

Consequently, because Plaintiff's cruel and unusual punishment claim is not viable for the three forgoing reasons, Defendant is entitled to summary judgment on any claim premised on the Eighth Amendment.

## CONCLUSION

For the reasons expressed above, Defendant's motion for summary judgment must be granted as to both claims in Plaintiff's complaint – one for negligence, and one for a violation of the Eighth Amendment.  An appropriate Order will be entered.


Date: November 8, 2017               s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.